**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ARMANDA COLES,

           Plaintiff,

v.                                  Case No. 6:14-cv-845-Orl-37DAB

POST MASTER GENERAL UNITED
STATES POSTAL SERVICES,

           Defendant.

**ORDER**

This cause is before the Court on the following:

1. Defendant's Motion to Dismiss Amended Complaint (Doc. 15), filed November 21, 2014; and

2. Plaintiff's Response to Motion to Dismiss (Doc. 17), filed December 13, 2014.

Upon consideration, the Court finds that Defendant's Motion is due to be denied.

**BACKGROUND**

Plaintiff, an African American female over the age of forty (*see* Doc. 13, ¶ 16), filed this employment discrimination suit against her employer, the U.S. Postal Service ("USPS") on May 30, 2014. (*See* Doc. 1.) On November 7, 2014, she filed an Amended Complaint alleging "violations of her civil rights as set forth in Title VII of the Civil Rights Acts of 1964 and the Age Discrimination [in Employment] Act." (Doc. 13, p. 1.). She brings the following three claims: (1) a discrimination claim based on disparate treatment

(*id.* ¶¶ 15–21); (2) a retaliation claim based on the fact that "she complained about past acts of discrimination" (*id.* ¶¶ 22–27); and (3) a claim for "retaliation based upon race and age" because she was "subjected to a hostile work environment" (*id.* ¶¶ 28–35). In support, she pleads the following: (1) she had previously been unlawfully terminated after filing an Equal Employment Opportunity Commission ("EEOC") complaint against Defendant, but as a result of the EEOC process, she was reinstated to her Mail Handler position (*id.* ¶ 7); (2) her immediate supervisor was observed "searching [her] vehicle without permission to do so from her or any proper authority," and the Manager of Distribution Operations ("MDO") "stood by and watched as one of her direct reports committed [this] illegal act" (*id.* ¶¶ 7–8); (3) she was issued an Investigative Interview for "alleged attendance problems" even though she "did in fact submit the required leave paper work," which "had a chilling effect on the decision to file future EEO Complaints" (*id.* ¶ 13); and (4) despite receiving a favorable bid assignment based upon her seniority, she was "required to work the culling bed" outside of her bid assignment, and "[o]ther non African Americans [sic] and other employees not over forty were not required to work outside of their bid assignment" (*id.* ¶ 14).

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 15.) Plaintiff opposes. (Docs. 17.) The matter is now ripe for the Court's adjudication.

**STANDARDS**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim." In considering a motion to dismiss, the Court limits its "consideration to the well-pleaded factual allegations, documents central to or

2

referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint in its entirety, arguing that "Plaintiff continues to base her claims on 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements' that 'do not suffice' under the federal rules." (*Id.* at 1–2 (quoting *Ashcroft*, 556 U.S. at 678).). The Court disagrees. Plaintiff has sufficiently, if somewhat inartfully, pled factual allegations to support the elements of each cause of action.

**I.    Disparate Treatment**

It is unlawful for an employer "to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To succeed on a claim for discrimination based on disparate treatment, Plaintiff must prove: (1) she is a member of a protected class; (2) she was qualified for her employment position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or treated less favorably than a similarly situated comparator outside of her protected class. *Maynard v. Bd. of Regents*, 342 F.3d 1281,

1289 (11th Cir. 2003).

Defendant's primary argument for dismissal of Plaintiff's disparate treatment claim is that she has not adequately alleged an adverse employment action. "To prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).

Defendant relies on *Davis*, where the court stated that:

> an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause—especially where, as here, the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification.

245 F.3d at 1245; (*see also* Doc. 15, p. 7). The present case is distinguishable from *Davis.* The *Davis* plaintiff was the only African American police officer in the Town of Lake Park and he was eventually selected to serve as an officer-in-charge ("OIC"). *Davis*, 245 F.3d at 1235. The court found that the plaintiff did not suffer a "material change in his regular work assignments" when he was temporarily removed from the OIC position because: (1) OIC is an "ephemeral designation" that was not a permanent feature of his job responsibilities as a police officer; (2) "it [was] not clear that actual additional responsibilities of serving as OIC were substantial"; (3) the OIC duties were assumed only on a part-time basis; and (4) "he served as OIC on subsequent occasions after each instance when he was removed." *Id.* at 1244. In contrast, Plaintiff alleges that she won a bid and was able to obtain a favorable job assignment that did not require her to work the

4

culling belt, yet, since her first EEOC complaint, she was required to work the culling belt for over two years up until the time she filed the EEOC complaint that lead to this action. (*See* Doc. 13, ¶¶ 14, 18.) Taking these allegations as true and viewing them in the light most favorable to Plaintiff, *see Ashcroft*, 556 U.S. at 678, it is plausible that her job assignment is a permanent position and her two plus years of work at the culling belt was more than a "temporary removal" from her position. *See Davis*, 245 F.3d at 1235 (considering the permanency of position and the temporariness of the change in duties).

Plaintiff has sufficiently pled factual allegations that, taken as true, satisfy each element of a disparate treatment claim. First, Plaintiff alleges that she is a member of not just one but three protected classes—she is African American, she is a woman, and she is over forty years old. (*See* Doc. 13 ¶ 16.) Second, Plaintiff adequately alleges that she is qualified for the position, which is supported by the factual allegations that she "performed the duties of the position for over 28 years," "has over forty years of total government service," and throughout her career she has "acquired a considerable amount of training, experience and knowledge which has enabled her to perform her job as a highly functioning employee." (*Id.* ¶ 17.) Third, Plaintiff's delineates how she suffered adverse employment action: (1) her private vehicle was searched based on unfounded accusations and no other employee's vehicles were searched (*id.* ¶ 7–8, 18); and (2) she has "been required to work an assignment that is not part of her bid assignment" (*id.* ¶ 18) despite the fact that she has seniority over several other employee's (*id.*), "she successfully bid for a desirable job assignment" that does not require her to work the culling belt (*id.* ¶¶ 14, 18), and other employees were not required to work outside of their bid assignment (*id.* ¶ 14). Lastly, Plaintiff sufficiently pleads that she was treated less

favorably than a similarly situated comparator outside her protected class, *see Maynard*, 342 F.3d at 1289, by alleging that: (1) no other employees, including a Hispanic male, Hispanic female, and white male, had their vehicles searched (*id.* ¶ 11, 18); and (2) other non-African Americans and employees over forty were not required to work outside of their bid assignment (*id.* ¶¶ 14, 18, 19).

## II.     Title VII Retaliation

Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." The elements of a Title VII retaliation claim are: (1) Plaintiff engaged in a protected activity; (2) her employer took adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

Defendant argues that Plaintiff did not state a cause of action for retaliation under Title VII because she did not suffer an adverse employment action as a result of the alleged retaliatory acts and, even if she did, "she fails to allege facts sufficient to allow the reasonable inference there was a 'but for' causal relationship between the protected activity and the adverse employment action." (*See* Doc. 15, p. 9.) The Court disagrees.

Albeit disjointedly, Plaintiff has adequately alleged each element of a Title VII retaliation claim. She alleges that: (1) "she had participated in a protected activity in the past," that is, she previously filed a different EEOC complaint against Defendant which culminated in her being unlawfully terminated; (2) as a result of that EEOC process, she

was reinstated to her position; and (3) "[s]ubsequent to her reinstatement, Management and [a person against whom she filed the first EEOC complaint] . . . subjected her to a series of harassing acts—[most significantly, requiring her to work outside of job assignment for several years (*see* Doc. 13, ¶ 14)]—that are acts of retribution for her participation in protected activity." (*See* Doc. 13, ¶¶ 7, 23, 24.) Going forward, Plaintiff will indeed be required to show a but-for causal connection between the protected activity and the adverse employment action, *see University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2534 (2013), but she need not do so at this stage of the pleadings, *see Benton v. Crane Merchandising Systems, Inc.*, No. 1:12-cv-185, 2013 WL 6081767, at *4 (M.D. Ga. Nov. 19, 2013) ("Plaintiff need not plead facts that would be required for a prima facie case on a motion for summary judgment."). Thus, Plaintiff's allegations are sufficient to "state a claim to relief that is plausible on its face" and survive a motion to dismiss. *See Twombly*, 550 U.S. at 570.

### III. Hostile Work Environment

Title VII is further violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a claim for hostile work environment, Plaintiff must allege that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of

vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).

Defendant asserts that Plaintiff failed to state a claim for hostile work environment because "none of the four incidents Plaintiff claims, whether considered individually or as a group, are sufficiently severe or pervasive that they affected a term or condition of employment." (Doc. 15, p. 14.)  The Court disagrees.

The "severe or pervasive" requirement "contains both an objective and a subjective component." *Miller*, 277 F.3d at 1276. In evaluating the objective severity of the harassment, the Court considers, *inter alia*: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. The Court finds that Plaintiff sufficiently alleges that Defendant and its employers' conduct unreasonably interfered with her job performance: it "denied [her] a preferred shift assignment that she was entitled to work . . . for a period of about two years." (*See* Doc. 13, ¶ 33.)

Defendant does not contest any other element of Plaintiff's hostile work environment claim; therefore, having found that Plaintiff sufficiently alleged the contested element, the Court finds that Defendant's Motion is due to be denied.[1]

## CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion to Dismiss Amended Complaint (Doc.15) is **DENIED**.

---

[1] All other arguments in the Motion (Doc. 15) not specifically addressed in this Order are rejected.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 27, 2015.

/s/ Roy B. Dalton Jr.
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record