# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

ARMANDA COLES,

        Plaintiff,

v.                                    Case No. 6:14-cv-845-Orl-37DAB

POST MASTER GENERAL UNITED
STATES POSTAL SERVICES,

        Defendant.

---

## ORDER

This cause is before the Court on the following:

1.    Defendant's Motion for Summary Judgment (Doc. 31), filed January 8, 2016;

2.    Plaintiff's Response to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 33), filed February 5, 2016; and

3.    Defendant's Reply Brief in Support of Its Motion for Summary Judgment (Doc. 34), filed February 19, 2016.

Upon consideration, the Court finds that Defendant's Motion is due to be granted.

## BACKGROUND[1]

Plaintiff Armanda Coles—an African American female over the age of forty—began working as a mail handler for Defendant, the United States Postal Service ("**USPS**"), in 1986. (Doc. 33-1, p. 1.) On two separate occasions in 1999 and 2005, Plaintiff: (1) was

---

[1] In resolving the Motion, the Court views all record evidence and reasonable inferences in the light most favorable to the non-moving party—Plaintiff Armanda Coles. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006).

terminated from her position with the USPS; (2) filed complaints with the Equal Employment Opportunity Commission ("**EEOC**") and USPS's Merit Systems Protection Board ("**MSPB**") alleging that one of her managers committed acts of discrimination against Plaintiff; and (3) was reinstated to her position with the USPS ("**the Prior Incidents**"). (*See* Doc. 31-1, pp. 30–31.)[2]

Since being reinstated in 2005, Plaintiff has been subjected to the following acts by USPS and its employers: (1) her vehicle was searched without her permission ("**Vehicle Search**"); (2) she was notified that her bid assignment was going to be abolished ("**Notification**"); (3) USPS human resources department ("**HR**") repeatedly reminded of her retirement eligibility ("**Retirement Reminders**"); (4) she was yelled at by her direct supervisor; (5) she was investigated regarding her attendance ("**Investigative Interview**"); and (6) she has been forced to work a culling belt "outside of her bid assignment" ("**Culling Belt Situation**") (collectively, "**the Alleged Discriminatory Acts**"). (Doc. 33-1, pp. 1–2.) Although Plaintiff notified USPS management of the Alleged Discriminatory Acts, no corrective action was taken. (*Id.*) As such, on July 12, 2012, Plaintiff filed another EEOC complaint ("**2012 EEOC Complaint**") alleging that USPS engaged in the Alleged Discriminatory Acts due to the Prior Incidents. (Doc. 31-7.) The EEOC administrative judge issued judgment in favor of USPS ("**EEOC Decision**"). On appeal, the EEOC Decision was affirmed.[3]

---

[2] Neither party submitted the 1999 or 2005 EEOC or MSPB complaints, nor did Plaintiff provide clear testimony as to the circumstances regarding the Prior Incidents (*see* Doc. 33-1, pp. 30–33), but USPS admits to these facts (*see* Doc. 25, ¶ 7).

[3] Neither party submitted the EEOC Decision or the appellate decision that affirmed the EEOC Decision. These facts were taken from Plaintiff's Amended Complaint (Doc. 13, ¶ 4) and were admitted to by USPS (Doc. 25, ¶ 4).

On May 30, 2014, Plaintiff initiated this employment discrimination suit against USPS. (*See* Doc. 1.) The operative three-count Amended Complaint asserts the following claims: (1) discrimination based on disparate treatment (Doc. 13, ¶¶ 15–21 ("**Count I**")); (2) retaliation based on the fact that "[Plaintiff] complained about past acts of discrimination" (*id.* ¶¶ 22–27 ("**Count II**")); and (3) "retaliation based upon race and age" because Plaintiff was "subjected to a hostile work environment" (*id.* ¶¶ 28–35 ("**Count III**")). USPS moves for summary judgment on all three Counts. (Doc. 31.) Plaintiff opposes (Doc. 33), and USPS has replied (Doc. 34). The matter is ripe for consideration.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the non-moving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Cntys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325).

"The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir. 1993)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## DISCUSSION

### I.  Counts I and II

To prevail on Counts I and II, Plaintiff must establish, *inter alia*, that she suffered an adverse employment action ("**Adverse Action Element**"). *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). USPS argues that it is entitled to summary judgment on Counts I and II because the Alleged Discriminatory Acts do not constitute adverse employment actions sufficient to establish a prima facie case of disparate treatment or retaliation. (Doc. 31, pp. 12–18.)

To satisfy the Adverse Action Element, Plaintiff must "show a *serious and material* change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). "Thus, if an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action." *Akins v. Fulton Cnty, Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005).

Whether an employment action is adverse is a question of fact that must be determined by a jury unless no genuine dispute remains. *See Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 830 (11th Cir. 2000) (treating the element of an adverse employment as a question of fact); *see also* Fed. R. Civ. P. 56.

In satisfaction of its initial burden on summary judgment, USPS points to an absence of evidence supporting the Adverse Action Element and cites Plaintiff's testimony that: (1) she has no first-hand knowledge of the Vehicle Search and has not noticed anything missing from her car as a result of the Vehicle Search; (2) she was unaware of anyone else who drove a car that would fit the description of the car involved in the reported incident that led to the Vehicle Search ("**Reported Incident**"); (3) she only received two Retirement Reminders in 2005—long before her 2012 EEOC Complaint— and did not receive another one since requesting that HR cease sending such reminders; (4) she believes that the Retirement Reminders were sent solely because she was previously injured on the job and she cannot support her contention that they were sent because of her race; (5) she was not harmed in any way by the Investigative Interview, which did not have a chilling effect on her decision to file future EEOC complaints; and (6) in regards to the Culling Belt Situation, she did not mind working the culling belt. (Doc. 31, pp. 12–18; Doc. 31-1, pp. 15, 19, 28–29, 34, 35, 44.)

Consequently, the burden shifts to Plaintiff to present affirmative evidence demonstrating an adverse employment action. *See Porter*, 461 F.3d at 1320. Plaintiff submits a declaration further describing the Alleged Discriminatory Acts. (Doc. 33-1.) She also cites her testimony that: (1) she was assigned to work the culling belt over junior employees; (2) HR stopped sending her Retirement Reminders only after she requested

that she not receive the reminders unless they were also sent to all eligible USPS employees; (3) the Vehicle Search was in violation of USPS policies and occurred without substantiation of the Reported Incident; (4) no other USPS employees received the Notification; and (5) as a result of all of this, she has been diagnosed with post-traumatic stress disorder, suffers from depression and high blood pressure, and has had to resume therapy with her psychiatrist. (Doc. 31-1, pp. 29, 33, 38, 44, 46, 48; Doc. 33-1.)

Even considering the Alleged Discriminatory Acts collectively, *see Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002), no reasonable jury could conclude that Plaintiff suffered an adverse employment action. Plaintiff's case is similar to that of the *Davis* plaintiff, who brought a race discrimination claim based on the following: (1) although he was selected to serve as officer in charge ("**OIC**") while his shift-sergeant was absent, he was temporarily replaced by another OIC on two occasions; (2) a memorandum from his lieutenant regarding his failure to follow certain departmental requirements; and (3) a second harsher memorandum that was placed in his personal folder warning that further unacceptable performance may result in further departmental actions. 245 F.3d at 1235–36. The U.S. Court of Appeals for the Eleventh Circuit affirmed a judgment in favor of the *Davis* defendant, finding no adverse employment action because: (1) the memorandums did not result in formal reprimands, further discipline, or tangible consequences in the form of loss of pay or benefits, or otherwise have a material impact on the terms and conditions of plaintiff's employment; (2) plaintiff was still able to perform his desired work responsibilities on some occasions; and (3) the loss of self-esteem or prestige in the eyes of others due to "unwarranted job criticisms or performance review" is rarely covered by Title VII's protections. *Id.* at 1240–42. The *Davis*

court expressed reluctance to questioning employers' business judgments in assigning work, and stated that, "even accepting that [plaintiff] may have felt some blow to his professional image when he was removed as OIC, that is simply not enough to prevail" in the Title VII action. *Id.* at 1244–45.

Here, Plaintiff: (1) was never suspended or threatened; (2) never suffered a decrease in pay; (3) did not receive formal discipline as a result of the Alleged Discriminatory Acts; and (4) did not suffer any other tangible harm.[4] *See Davis*, 245 F.3d at 1240–42. As such, Plaintiff has failed to demonstrate an adverse employment action essential to a prima facie case of disparate treatment and retaliation. USPS is, therefore, entitled to summary judgment on Counts I and II.

## I.    Count III

To state a claim for hostile work environment, Plaintiff must allege that: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on one of her protected characteristics; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment ("**Element At Issue**"); and (5) USPS is responsible for such environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). USPS argues that Plaintiff cannot establish the Element At Issue because the Alleged

---

[4] In contrast, in *Wideman v. Wal-Mart Stores, Inc.*, the Eleventh Circuit found an adverse employment action when: (1) plaintiff received formal written reprimands resulting in a suspension of her position; (2) a manager solicited negative feedback regarding plaintiff from her co-workers; (3) an assistant manager threatened to shoot plaintiff in the head if she inquired about her work schedule; and (4) an assistant manager needlessly delayed authorizing necessary medical treatment when plaintiff suffered an allergic reaction while at work. 141 F.3d 1453, 1455 (11th Cir. 1998)

Discriminatory Acts were not sufficiently severe or pervasive to alter the terms and conditions of employment. (Doc. 31, pp. 22–24.)

The Element At Issue contains "both an objective and subjective component." *Miller*, 277 F.3d at 1276. The conduct must create "an environment that a reasonable person would find hostile or abusive" *and* the plaintiff must "subjectively perceive the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Id.* at 23. In evaluating the subjective severity of the harassment, the Court should consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance ("**the Factors**"). *Id.*; *Miller*, 277 F.3d at 1276.

USPS submits that Plaintiff's "actions belie any claim [] that she found the [Alleged Discriminatory Acts] subjectively offensive" because: (1) the Culling Belt Situation occurred for two years before Plaintiff initiated this action; and (2) Plaintiff waited almost a decade after receiving the Retirement Reminders before filing this action. (Doc. 31, p. 23.) Further, USPS argues that Plaintiff cannot establish the objective component of the Element At Issue because: (1) "the conduct Plaintiff describes is relatively infrequent compared to cases in which courts have found a hostile work environment"; (2) Plaintiff does not identify "conduct sufficiently severe to alter the terms of her employment"; and (3) Plaintiff does not present evidence that she felt physically intimidated or was unable to perform her job duties as a result of the Alleged Discriminatory Acts. (*Id.* at 23–24.)

Plaintiff counters with testimony that, in addition to the Alleged Discriminatory Acts,

she was subjected to "ongoing and continuous [harassment] every day." (Doc. 31-1, p. 42.) Particularly, Plaintiff explains that the Culling Belt Situation was a common occurrence resulting in a constant denial of the benefit of her seniority.[5] (*Id.*) Without citation, Plaintiff discusses the circumstances surrounding the Alleged Discriminatory Acts as evidence of the harassment she underwent. (*See* Doc. 33, pp. 14–16.)

Plaintiff has established a factual dispute as to the subjective component of the Element At Issue through evidence that she has suffered health issues as a result of the Alleged Discriminatory Acts. (*See* Doc. 31-1, pp. 46, 48.) Additionally, her request for HR to cease sending the Retirement Reminders unless all eligible employees were receiving them sufficiently evidences her subjective belief that the action was offensive to create a question of fact for the jury.

Nevertheless, Plaintiff has failed to establish a genuine dispute as to the objective component of the Element At Issue. In its totality, the record evidence does not support a finding that the Alleged Discriminatory Acts were severe or altered the terms of her employment, and Plaintiff did not present affirmative evidence to establish that she felt physically intimidated or that she was unable to perform her job duties. *See Miller*, 277 F.3d at 1276 (instructing the Court to consider these factors). At best, the record evidence supports only one of the Factors—that Plaintiff suffered frequent harassment[6];

---

[5] Plaintiff identifies her firings during the Prior Incidents as evidence of harassment or tangible consequences of USPS's actions. (*See, e.g.*, Doc. 33, pp. 15–16.) However, those firings led to the previous EEOC process that resulted in her reinstatement in 2005. The instant action stems only from actions occurring after her 2005 reinstatement that prompted Plaintiff to file the 2012 EEOC Complaint.

[6] Considering the evidence of the Alleged Discriminatory Acts in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff suffered frequent harassment because the Culling Belt Situation was a common occurrence. (Doc. 31-1, p. 42.)

the evidence does not support a finding of the remaining Factors sufficient for a reasonable jury to find in favor of Plaintiff as to the Element At Issue. *Cf. Miller*, 277 F.3d at 1276–77 (finding that—given the "totality of the circumstances"—plaintiff need not establish that the actions interfered with his job duties when the evidence established that the harassment was frequent, severe and humiliating). As such, Plaintiff cannot establish a prima facie case for hostile work environment, and USPS is entitled to summary judgment on Count III.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (Doc. 31) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff as to all Counts and to close the case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 3, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record